UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                Plaintiff,

v.                                 Case No. 19-cv-1743

SUMMIT CONTRACTING, INC.,
CHAD M. SCHAMPERS, and
NATHANIEL R. SMITH,

                Defendants.

## UNITED STATES OF AMERICA'S VERIFIED COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

Plaintiff, the United States of America, by and through its undersigned attorneys, hereby alleges as follows:

### INTRODUCTION

1. Starting as early as 2018 and continuing to the present, defendants Chad Schampers ("Schampers") and Nathaniel Smith ("Smith") have conducted a fraudulent scheme through their company, Summit Contracting, Inc. ("Summit") (Schampers, Smith, and Summit collectively, "defendants") that has harmed and continues to harm scores of victims. Defendants induce Summit customers to finance their construction projects—often by misrepresenting the terms of the financing offered. Once approved for financing, Summit fully withdraws the funds for the project from the financing company before it completes its work. These withdrawals are typically made without the customer's knowledge, contrary to the payment authorization provided by the

customer, or both. Having already received the entire payment, Summit then regularly fails to provide the work and materials promised.

2. When dissatisfied customers complain and post negative reviews of Summit or attempt to obtain a refund, defendants either ignore the customer or pressure the customer into removing their negative review by threatening to not complete the work or demanding that the customer accept a partial refund that is a fraction of the amount of the customer's loan. Some Summit customers are left with substantial loan payments for work that is not what Summit promised, or worse, never completed at all.

3. The United States seeks to prevent continuing and substantial injury to consumers victimized by this fraudulent scheme by bringing this action for preliminary and permanent injunctions and other equitable relief under 18 U.S.C. § 1345 to enjoin the ongoing commission of wire fraud in violation of 18 U.S.C. § 1343 and banking law violations in violation of 18 U.S.C. § 3322(d) and 18 U.S.C. § 1344.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1345 and 28 U.S.C. §§ 1331 and 1345.

5. Venue lies in this district pursuant to 28 U.S.C. § 1391(b)(1) & (2).

## PARTIES

6. Plaintiff is the United States of America.

7. Defendant Summit Contracting, Inc. is, and was at all times relevant to this action, a corporation organized and existing under the laws of the State of Wisconsin. Summit was registered with the Wisconsin Department of Financial institutions on or about September 10,

2018. Summit's registered agent for service of process is United States Corporation Agents, Inc., 2761 Allied Street, 1st Floor, Green Bay, Wisconsin, 54304.

8. Defendant Chad Schampers resides in De Pere, Wisconsin, located in the Eastern District of Wisconsin. Schampers is one of the owners of Summit Contracting, Inc.

9. Defendant Nathaniel Smith resides in Oconto, Wisconsin, located in the Eastern District of Wisconsin. Smith is one of the owners of Summit Contracting, Inc.

10. Defendants Schampers and Smith direct and control Summit Contracting, Inc., use Summit to perpetrate the fraudulent scheme alleged herein, and directed the fraudulent acts alleged herein. Both Schampers and Smith operate Summit from an office in De Pere, Wisconsin, located in the Eastern District of Wisconsin.

## FACTUAL BACKGROUND

11. Summit holds itself out as an established construction company that specializes in residential and commercial roofing, siding, window replacements, HVAC, and doors. Summit aggressively markets its services using a variety of methods, including over the internet, radio, and by contacting leads obtained from a variety of sources using the telephone. Summit's advertisements often include multiple false and misleading representations to entice potential customers, including falsely promising prospective customers gift cards, entries into a contest for a $10,000 "home makeover giveaway," and guided fishing trips, all of which Summit has no intent of awarding at the time the promises are made.

12. Summit employs multiple sales representatives who contact potential leads and schedule sales appointments in the prospective customer's home. Summit's sales team is comprised in large part of individuals with no construction background, who receive no training regarding the products and services that they are required to sell.

3

13. At the initial (and only) sales meeting, the Summit representative makes a number of false statements about Summit and its services to induce the prospective customer to retain Summit. For example, a PowerPoint presentation that Summit representatives present to customers falsely represents that Summit is an established, reputable company that has been in business since 2007, when in fact Summit has only been in business since September 2018 and has been the subject of multiple complaints to the Better Business Bureau, state regulatory agencies, and law enforcement.

14. Pursuant to the directions of Schampers and Smith, Summit representatives use high pressure, deceptive sales techniques. Schampers and Smith have instructed Summit sales representatives to never to leave contact information or estimates with a customer after a sales meeting, and that if they ever communicate with a customer after the initial sales meeting they will be fired. Schampers and Smith have regularly used a variety of aliases when interacting with customers, in order to conceal their identities and to avoid accountability to dissatisfied customers.

15. Schampers and Smith instructed Summit representatives that they should pressure prospective customers to finance their projects with Summit, using a financial institution identified by Summit. One of these financial institutions is EnerBank USA ("EnerBank"). In addition, Summit has used Green Sky, Inc. ("GreenSky"), which offers loans funded by a variety of participating financial institution lenders. The lenders who ultimately provide funds to Summit's customers are each a "financial institution" within the meaning of 18 U.S.C. § 20.

16. Schampers and Smith instructed sales representatives that they do not want a customer to pay for a Summit project without financing because if they did so Summit would have trouble collecting money upon completion of the work. Schampers and Smith also instructed sales

4

representatives that they would be paid their commissions more quickly for sales that the customer chose to finance.

17. Pursuant to Schampers's and Smith's direction, at their initial sales meeting Summit sales representatives attempt to induce the customer to apply for financing by misrepresenting the terms of the financing being offered. For example, at times Summit representatives informed prospective customers that they were applying to 0% financing and that no payments would be due for a period of time, when in fact the financing often included no-interest free term, required immediate, substantial payments, and was subject to an interest rate of up to 25%.

18. If a prospective customer agreed to apply for financing, the sales representative instructed the prospective customer to electronically apply for financing during the initial sales meeting, using an application on the sales representative's phone or tablet. If the customer was approved, the sales representative would notify Summit. For EnerBank-financed transactions, Summit would then immediately process the application and e-mail the sales representative paperwork to be returned upon completion of the project. The Summit sales representatives were instructed that they needed the customer to sign that paperwork at the initial sales meeting.

19. Pursuant to the terms of Summit's agreements with various financial institutions, Summit was not permitted to withdraw the entire amount of a customer's loan until its work on a project was complete. To induce the customer to sign final loan paperwork that Summit needed to access the entire amount of the loan, Summit sales representatives were instructed to mislead the customer regarding the nature of the documents that they were signing, and to inform the customer that they were simply agreeing to the financing terms or signing application paperwork. Schampers and Smith also misled sales representatives concerning the nature of the documents

that sales representatives were requiring the customer to sign, and instructed them that the documentation was needed to "verify funds" as part of the loan application process. In some instances, depending on the financial institution involved, this documentation actually included confirmation that Summit's work on a project was completed.

20. One former employee of Summit described defendants' usual practice as follows:

*We [Summit sales representatives] were instructed not to leave the [customer's] house without the final signature from the customer saying the work was complete. The customer would think they were signing for the financing, but instead they were signing to the [financing company] that the work was complete. No person in their right mind would sign saying the work was complete when the sales person was still in their living room. Chad and Nate made it very clear that the sales team had to sell in 'one sit' [i.e., a single meeting], never speak to a customer a second time, and get that final signature [ . . . ] When I would leave the customer's house I would never talk to them again. The customer would get a copy of the Summit paperwork and nothing from the finance company.*

21. Another former Summit sales representative confirmed that:

*Chad [...] directed us to have the customer sign the work complete form every time prior to leaving the job. So literally the customer would agree to the project, get approved for . . . financing, and then sign the work complete email/form all that first day. A rep from [EnerBank] met with us at Summit and explained that we could not have customers signing the work complete agreement right away or all until the work was done. Following this meeting Chad specifically told us even after the [EnerBank] rep told us not to, that we needed to have the work complete paperwork signed. This was all done electronically. So in summary, the customer agreed to the work, the sales person notifies [Summit] and literally waits for the second email with the work complete paperwork to come through and be signed by the customer. We needed to have that signed before leaving the customer's house. The customer was told they were signing to the terms, and not knowing that they were signing off on the work being done. Sales people were told they would not be paid without this.*

22. Defendants understood that they were not authorized to draw the entire amount of a customer's loan unless and until the work was completed. Nevertheless, within a short time after the initial sales meeting between the Summit representative and customer, Summit would submit paperwork to the financing institution falsely representing that work was completed, or, depending

6

on the financial institution's requirements, simply request disbursement of the entire loan. As a result, the financial institution would release the entire amount of the customer's loan to Summit— in some instances before Summit even began the work, and in many instances well before the work was completed. Summit customers have also reported finding out that their Summit project was financed when they unexpectedly received a bill from a finance company, showing a balance and payments due.

23. Further, Summit customers were often disappointed with the inconsistency between what the Summit representative promised, and the actual work that Summit performed. For example, despite Summit sales representatives' representations to customers that Summit did not use subcontractors, the overwhelming majority (if not all) of Summit's work was completed by subcontractors. Summit would often provide products of much lower quality than the products promised, or fail to complete projects at all. When customers complained or posted negative reviews online, Summit refused to complete the work or provide even a partial refund until the negative review was withdrawn.

24. Based on Summit's high pressure, aggressive, and deceptive sales techniques, a significant proportion of Summit's customers elect to finance the projects. Defendants' fraudulent schemes are ongoing, and absent injunctive relief by this Court, defendants will continue to injure consumers.

25. Upon information and belief, the United States alleges that defendants have knowledge that their conduct facilitates a wire fraud scheme and banking law violations.

**REPRESENTATIVE EXAMPLES OF DEFENDANTS' FRAUDULENT SCHEME**

26. C.L. ("Customer #1") met with a Summit representative on April 19, 2019, and retained Summit to perform work on her roof and windows. Summit promised Customer #1 it

7

would perform the work between June 7 and June 21, 2019. Customer #1 agreed to finance the project, but explained to the Summit representative that she had bad credit. Customer #1 and the Summit representative then called Customer #1's mother, who resides in an assisted living facility, to see if she would co-sign the loan. At no time did Customer #1 or her mother agree to take out a loan in Customer #1's mother's name only. However, about two weeks later, Customer #1's mother received paperwork in the mail from GreenSky financing, and Customer #1 realized that a loan in the amount of $62,968 was taken out in her mother's name only. Summit withdrew $12,593.60 of this amount on April 23, 2019, then the remaining $50,374.00 two days later, on April 25, 2019. Summit did not begin work on the project until mid-May, 2019, and completed its work shortly thereafter. Customer #1 was not satisfied with the quality of some of the work performed, and Customer #1's daughter posted negative reviews of Summit's work online. When this occurred, a Summit representative contacted Customer #1 and threatened her that Summit would not complete the work until the bad reviews were removed.

27. K.L. ("Customer #2") contacted Summit to obtain a new roof and gutters on his home. On November 1, 2018, he met with a Summit representative, who quoted $22,171 for the work, and provided Customer #2 with a completion date of December 3, 2018. The Summit representative encouraged Customer #2 to finance the project, and led Customer #2 to believe that the project was being financed by Summit, rather than an outside financing company. The Summit representative obtained all of Customer's #2 personal information to determine if he qualified for the loan. According to Customer #2, it was not until he received a contract from Green Sky financing that he realized the loan was provided by a third party with what he described as an "extremely high interest rate" for the loan. On November 5, 2018, Summit withdrew $11,000 from the Green Sky loan account. Summit began work on the project on November 19, 2018, and

8

took a second withdrawal from Customer #2's Green Sky account in the amount of $11,000 the very next day, November 20, 2019. Customer #2 was contacted by Green Sky asking if work was completed on his home. Customer #2 informed Green Sky that the work was not compete, and he did not understand why the second half of the loan was withdrawn without the gutters and gutter guards being installed and a final walk-through being completed. Customer #2 was not satisfied with Summit's work, and it was not until Customer #2 submitted a complaint to the Better Business Bureau that Summit offered to pay for half the cost of repairs and a partial refund check in the amount of $550.00.

28. O.D. and J.D. ("Customer #3") met with a Summit representative on March 12, 2019. During a five-hour sales pitch, the Summit representative wrote multiple estimates and persuaded Customer #3 to agree to a deal. Ultimately, Customer #3 agreed to a quote of $23,052 for installation of thirteen 7400 series, double-hung and glider windows. Customer #3 made a $4,000 down payment and agreed to finance the balance. The Summit representative informed Customer #3 that half of the balance would be withdrawn for supplies, and the remainder would be withdrawn upon completion of the project. Summit began work on April 12, 2019. Customer #3 contacted Green Sky on April 24, 2019, and Green Sky informed Customer #3 that Summit had withdrawn all of the funds for the project because GreenSky had received information that the project was completed. The last time that Summit came to Customer #3's residence was August 7, 2019. Customer #3 was not satisfied with the work that Summit completed. Summit never conducted a final walk through and Customer # 3 states that they never signed paperwork indicating that the work was completed.

29. M.K. ("Customer #4") met with a Summit representative on or about April 11, 2019. Over the course of a five-hour, high pressure sales pitch, the Summit representative

9

persuaded Customer #4 to hire Summit to perform some work on her property for $18,000. The Summit representative informed Customer #4 that five year interest free financing was available. Customer #4 agreed to apply for financing through GreenSky using the sales representative's electronic tablet. The Summit representative led Customer #4 to believe that she was just applying to see if she was eligible for zero percent financing, but she later received paperwork in the mail from GreenSky showing three withdrawals all before April 30, 2019, when the project was scheduled to begin. Customer #4 states that she did not agree to the financing before it was taken out in her name and fully withdrawn. GreenSky refused to freeze the payments and informed Customer #4 GreenSky had received paperwork from Summit assuring the work was done and completed to her satisfaction. To Customer #4's knowledge, she never signed anything confirming that the work was complete. When Customer #4 filed a complaint with GreenSky, Summit offered her a partial refund of $4,000, which Customer #4 refused to accept because it was far less than her total losses.

30. M.I. ("Customer #5") learned about Summit at a home and garden show, and contacted Summit to obtain an estimate for a roof replacement. In approximately October or November of 2018, Customer #5 met with a Summit representative, who provided an estimate for replacing her home and garage roof. The Summit representative offered financing for the project through Green Sky, which Customer #5 applied for. She was approved for $7,500 in financing, and paid $325 for the project in cash. The work on Customer #5's home did not begin until April 8, 2019, but Customer #5 received her first bill from Green Sky in late February, 2019. The full amount of the funds for the project were withdrawn on February 10, 2019. Customer #5 was not satisfied with the work that Summit performed, and posted a negative review online. Summit offered to pay her $500 to remove the negative review. Summit never completed a final walk-

10

Case 1:19-cv-01743-WCG   Filed 11/27/19   Page 10 of 14   Document 1

through with Customer #5 to discuss the work that had been completed and ensure that Customer #5 was satisfied.

31. C.B. ("Customer #6") contacted Summit for an estimate for new windows on February 9, 2019, after hearing one of Summit's radio advertisements. Customer #6 met with a Summit representative that same day. The Summit representative provided Customer #6 information for GreenSky financing, and Customer #6 was approved for $33,000. In April 2019, GreenSky contacted Customer #6 to ask about the completion of Summit's contracted work. Customer #6 learned at that time that Summit had withdrawn the full amount of the loan before any work had been commenced. At no time had Customer #6 told Summit or GreenSky that the work was complete. As of late June, 2019, Summit had not completed the promised work.

32. As demonstrated by these representative examples, victims suffer financial losses from the wire fraud scheme and banking law violations facilitated by defendants.

33. Absent injunctive relief by this Court, defendants' conduct will continue to cause injury to victims.

## CLAIM FOR RELIEF: PRELIMINARY AND PERMANENT INJUNCTIONS PURSUANT TO 18 U.S.C. § 1345

34. The United States realleges and incorporates by reference the preceding paragraphs of this Complaint as through fully set forth herein.

35. By reason of the conduct described herein, defendants violated, are violating, and are about to violate 18 U.S.C. § 1343 by executing a scheme or artifice to defraud for obtaining money by means of false or fraudulent representations with the intent to defraud and, in so doing, using wire communications. Defendants have also violated, are violating, and are about violate 18 U.S.C. § 1344 by executing and attempting to execute a scheme or artifice to obtain moneys

11

and funds under the custody or control of a financial institution by means of false or fraudulent pretenses, representations, or promises.

36. Upon a showing that defendants are committing or are about to commit wire fraud or a banking law violation, the United States is entitled, under 18 U.S.C. § 1345, to preliminary and permanent injunctions restraining all future fraudulent conduct and any other action that this Court deems just in order to prevent a continuing and substantial injury to the victims of fraud.

37. As a result of the foregoing, the Court should enjoin defendants' conduct pursuant to 18 U.S.C. § 1345.

WHEREFORE, the United States of America requests that the Court issue preliminary and permanent injunctions in this matter enjoining the defendants as follows:

(1) Prohibiting defendants Summit Contracting, Inc., Chad M. Schampers, and Nathaniel R. Smith, defendants' agents, officers, and employees, and all persons in active concert or participation with defendants, from:

> (a) Making any false statement to any financial institution with respect to any financing transaction;
>
> (b) Misrepresenting to prospective or actual Summit customers the terms of financing offered for Summit projects;
>
> (c) Requiring Summit customers to sign paperwork concerning the completion of work before Summit has confirmed completion of the work with the customers;
>
> (d) Threatening or intimidating any customer or former customer of Summit who posts a negative review online or in any other medium or provides information in connection with any law enforcement investigation of defendants' misconduct; and/or

(e) Destroying, deleting, removing, or transferring any and all business, financial, accounting, and other records concerning defendants' operations; and

(2) Enjoining all future fraudulent conduct and any other action that the Court deems just in order to prevent a continuing and substantial injury to the persons and entities affected by the defendants' wire fraud and banking law violations, including without limitation, current, past, and future customers of Summit who obtained financing.

The United States further requests that the Court order such other and further relief as the Court shall deem just and proper.

Dated this 27th day of November, 2019.

MATTHEW D. KRUEGER
United States Attorney

By:   /s/Emily A. Constantine

EMILY A. CONSTANTINE
Assistant U.S. Attorney
Wisconsin Bar No.1087257
Office of the United States Attorney
Eastern District of Wisconsin
517 East Wisconsin Avenue, Room 530
Milwaukee, WI  53202
Telephone: (414) 297-1700
Fax: (414) 297-4394
emily.constantine@usdoj.gov

## VERIFICATION

I, Emily A. Constantine, hereby verify and declare under penalty of perjury that I am one of the attorneys for the United States of America in the above-captioned action, that I have read the foregoing Verified Complaint, and that the facts stated therein are true and correct to the best of my knowledge, information, and belief. The sources of my knowledge and grounds of my belief are official files and records of the United States, public records, and information supplied to me by law enforcement officers who investigated this case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 27th day of November, 2019, in Milwaukee, Wisconsin.

/s/Emily A. Constantine

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

|  |  |
|---|---|
| )<br>)<br>)<br>)<br>*Plaintiff(s)* )<br>v. )<br>)<br>)<br>)<br>)<br>*Defendant(s)* )<br>) | Civil Action No. 19-cv-1743 |

**SUMMONS IN A CIVIL ACTION**

To: *(Defendant's name and address)*

    A lawsuit has been filed against you.

    Within 21 days after service of this summons on you (not counting the day you receive it) – or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12(a)(2) or (3) – you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or the plaintiff's attorney, whose name and address are:

    If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*STEPHEN C. DRIES, CLERK OF COURT*

Date: _____       _____
    *Signature of Clerk or Deputy Clerk*

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

|  |  |  |
|---|---|---|
| _____<br>*Plaintiff(s)*<br>v.<br>_____<br>*Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. |

**SUMMONS IN A CIVIL ACTION**

To: *(Defendant's name and address)*

 

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you receive it) – or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12(a)(2) or (3) – you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or the plaintiff's attorney, whose name and address are:

 

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

 

*STEPHEN C. DRIES, CLERK OF COURT*

Date: _____     _____
                                                                                            *Signature of Clerk or Deputy Clerk*

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | )
United States of America | )
*Plaintiff(s)* | )
v. | ) Civil Action No. 19-cv-1743
| )
Summit Contracting, Inc. | )
*Defendant(s)* | )

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Summit Contracting, Inc.
1703 West Matthew Drive
De Pere, WI, 54115

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you receive it) – or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12(a)(2) or (3) – you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or the plaintiff's attorney, whose name and address are:
Emily A. Constantine, Assistant United States Attorney
Eastern District of Wisconsin
517 E. Wisconsin Ave., Ste. 530
Milwaukee, WI 53202

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*STEPHEN C. DRIES, CLERK OF COURT*

Date: 11/27/2019

*Signature of Clerk or Deputy Clerk*

JS 44 (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

Place an "X" in the appropriate box (required): [X] Green Bay Division  [ ] Milwaukee Division

## I. (a) PLAINTIFFS
United States of America

## DEFENDANTS
Summit Contracting, Inc., Chad M. Schampers, Nathaniel R. Smith

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Emily A. Constantine, Assistant United States Attorney (EDWI)
517 E. Wisconsin Ave., Suite 530, Milwaukee, WI 53202
414-297-1704

Attorneys *(If Known)*
Attorney Brett Reetz, Reetz Law Office S.C.
242 Michigan St., Ste 201, Sturgeon Bay, WI 54235
920-743-6485

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

[X] 1 U.S. Government Plaintiff
[ ] 2 U.S. Government Defendant
[ ] 3 Federal Question (U.S. Government Not a Party)
[ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability |  | **PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander |  | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability / [ ] 368 Asbestos Personal Injury Product Liability |  | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine |  | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability / **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle / [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | **SOCIAL SECURITY** | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability / [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | [ ] 861 HIA (1395ff) | [ ] 480 Consumer Credit |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury / [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | [ ] 862 Black Lung (923) | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability |  | [ ] 751 Family and Medical Leave Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | [ ] 362 Personal Injury - Medical Malpractice / [ ] 385 Property Damage Product Liability |  | [ ] 864 SSID Title XVI | [ ] 850 Securities/Commodities/ Exchange |
|  |  |  | [ ] 865 RSI (405(g)) | [X] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | **FEDERAL TAX SUITS** | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights / **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting / [ ] 463 Alien Detainee |  | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment / [ ] 510 Motions to Vacate Sentence |  |  | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations / [ ] 530 General |  |  | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment / [ ] 535 Death Penalty | **IMMIGRATION** |  |  |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other / **Other:** | [ ] 462 Naturalization Application |  | [ ] 950 Constitutionality of State Statutes |
|  | [ ] 448 Education / [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions |  |  |
|  | [ ] 550 Civil Rights |  |  |  |
|  | [ ] 555 Prison Condition |  |  |  |
|  | [ ] 560 Civil Detainee - Conditions of Confinement |  |  |  |

## V. ORIGIN *(Place an "X" in One Box Only)*

[X] 1 Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from Another District *(specify)*
[ ] 6 Multidistrict Litigation - Transfer
[ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S.C. 1345
Brief description of cause:
Civil action to enjoin ongoing wire fraud and banking law violations.

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: 11/27/2019
SIGNATURE OF ATTORNEY OF RECORD: s/Emily A. Constantine

**FOR OFFICE USE ONLY**
RECEIPT #  AMOUNT  APPLYING IFP  JUDGE  MAG. JUDGE

Case 1:19-cv-01743-WCG   Filed 11/27/19   Page 1 of 1   Document 1-4